UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CLARKSVILLE MINISTRIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00135-TWP-DML |
| ) | |
| TOWN OF CLARKSVILLE, INDIANA, ) | |
| TOWN OF CLARKSVILLE BUILDING ) | |
| COMMISSION, and ) | |
| RICK BARR in his Official Capacity as the Town ) | |
| of Clarksville's Building Commissioner, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON PLAINTIFF'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER**

This matter is before the Court on an Emergency Motion for Temporary Restraining Order ("TRO") by Plaintiff Clarksville Ministries, LLC ("CM") (Filing No. 4). Despite its name, CM seeks to operate "an adult-oriented business that offers, to the consenting adult public, various retail items including sexually themed, but non-obscene, books, magazines, videos, and other products, all for off-site consumption, as well as on-site viewing of adult-themed but non-obscene motion pictures" in Clarksville, Indiana (Filing No. 5 at 9). Although it applied to receive a license to open this establishment on August 13, 2021, CM has yet to receive permission to commence business from Defendants Town of Clarksville, Indiana, Town of Clarksville Building Department, and Rick Barr, in his Official Capacity as the Town of Clarksville's Building Commissioner (collectively, the "Town"). *Id.* at 12. As a result, CM requests that the Court provide immediate relief. The parties submitted briefing and appeared virtually for oral argument on September 3, 2021. For the reasons discussed below, the Court **grants** CM's Motion.

## I.     DISCUSSION

CM maintains that the Town's response to CM's license application flouts Town of Clarksville Zoning Ordinance ("CZO") Subsection 60-80(A), which provides that

> Upon the filing of a *completed* application for an Adult Business license ["ABL"] or an Adult Business employee license ["ABEL"], the Enforcement Officer *shall issue* a temporary license to the applicant, which temporary license shall expire upon the final decision of the Enforcement Officer to deny or grant the license. Within twenty (20) days after the receipt of a completed application, the Enforcement Officer shall either issue a license, or issue a written notice of intent to deny a license to the applicant.

(Filing No. 1-3 at 7 (emphases added)).  In turn, Subsection (B) provides, in relevant part, that

> The application shall be accompanied by a diagram of the premises, showing a plan thereof, specifying the location of one or more manager's stations and the location of *all overhead lighting fixtures*, and designating any portion of the premises in which patrons will not be permitted. . . . *Internal dimensions of all areas* of the interior of the premises shall be noted. . . .

*Id.* (emphases added).  Accordingly, CM requests that the Court immediately order the Town to issue it a temporary ABL and issue employee Timothy Miller ("Miller") a temporary ABEL (Filing No. 4 at 1; *see also* Filing No. 1-3 at 4 (CZO § 60-50(C)(1)) ("One licensed employee shall be on duty and situated in each manager's station at all times that any patron is present inside the premises.")).  The TRO request is especially timely to CM as the Town is in the process of amending pertinent ordinances in such a way that would exclude CM's location from operating as an adult business (*see* Filing No. 5 at 26 ("[T]he Town now seeks to amend its zoning ordinances to permanently prevent [CM]'s operation before it can even begin.").

The Town responds that CM has yet to submit a "complete" application: (1) CM has not provided the dimensions of two areas colored in green on a floorplan it provided to the Town, comprising approximately 40 individual "peep show" rooms that are enclosed with doors, and (2) CM's diagram did not specify the location of all overhead lighting fixtures in these areas, (Filing No. 19 at 8).  Moreover, Miller's ABEL application is incomplete because it is missing (1) a copy

2

of Miller's driver's license and, (2) his photograph, (Filing No. 23-1 at 1).  CM's requests, then, are fatally flawed in three significant respects: (1) CM has no standing to bring this suit, (2) the dispute is not ripe, and (3) none of the proffered grounds justify a TRO (Filing No. 19 at 12–17).  The Court will initially respond to the two, threshold justiciability matters before turning to the substantive TRO argument.

**A.**     **Standing**

First, standing under Article III demands that "(1) the party must have personally suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one that is likely to be redressed by a favorable decision."  *United Transp. v. Surface Transp. Board*, 183 F.3d 606, 611 n.2 (7th Cir. 1999).  The Town argues that, because CM does not at this point own the business or assets (it has not executed a pertinent purchase agreement) and does not yet hold a lease to the relevant building (it has not unconditionally executed the lease agreement), it cannot currently conduct its adult business (*see* Filing No. 19 at 6–9).

At the hearing, and in supporting evidence, though, CM has indicated that, in addition to expending time and money in the project, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977) (finding standing when "it is inaccurate to say that MHDC suffers no economic injury from a refusal to rezone, despite the contingency provisions in its contract.  MHDC has expended thousands of dollars on the plans for Lincoln Green and on the studies submitted to the Village in support of the petition for rezoning.  Unless rezoning is granted, many of these plans and studies will be worthless even if MHDC finds another site at an equally attractive price."), it could commence business within twenty-four hours of receipt of the temporary ABL and ABEL, which have applications that are untethered to any responsive deadlines, s*ee Zebulon Enterprises, Inc. v. DuPage Cty.*, Illinois, 438 F. Supp. 3d 881, 890–91 (N.D. Ill. 2020) ("Zebulon

alleges facts sufficient to confer standing. It alleges that the Ordinance does not require the DuPage County Sheriff to provide sex trafficking training *within any definite period of time* and that such training is required for both it and its employees to obtain the licenses respectively needed to conduct business and work. It follows that *the sheriff could delay Zebulon's licensure by withholding training*.") (emphases added).

And though the Town contends that "CM has no expectation of receiving any relief from a favorable decision" since it has not filed a "completed application", (Filing No. 19 at 8–9), the Court finds that a favorable decision would provide CM immediate and significant relief—permitting all agreements to be executed and the business to open—especially considering the Town's prior dilatory response regarding application deficiencies (*see* Filing No. 19-4 at 2 (indicating that CM, despite numerous earlier inquiries, was first informed of deficiencies in its August 13, 2021 ABL application on August 31, 2021)), the ease and speed in which CM can correct its supporting materials, *cf. Chulchian v. City of Indianapolis*, 633 F.2d 27, 34 (7th Cir. 1980) ("We cannot order the City to issue a license because the administrative process is not complete."), and the seemingly assured (and imminent) passage of a new ordinance, *cf. A&P Enterprises, LLC v. City of Gulfport*, No. 1:10-cv-00473-LG-RHW (S.D. Miss. Jan. 26, 2011) (dismissing case for lack of standing when, among other things, plaintiff "may have been able to submit a corrected application before the ordinance was enacted, but this is an entirely speculative assertion," and "even if this Court were to require the City to process the application, the City would be entitled to deny the application" because it was incomplete).

Finally, despite arguing that "CM does not have standing to assert the rights of" an employee seeking an ABEL (*i.e.*, Miller), CM can *only* operate with a licensed employee on duty (Filing No. 1-3 at 4 ("One licensed employee shall be on duty and situated in each manager's

station at all times that any patron is present inside the premises."), which imbues CM with standing to assert a claim on that employee's behalf, *see Zebulon Enterprises, Inc.*, 438 F. Supp. 3d at 890–91 ("Zebulon alleges facts sufficient to confer standing. It alleges that the Ordinance does not require the DuPage County Sheriff to provide sex trafficking training within any definite period of time and that such training is required for both it *and its employees* . . .") (emphasis added).

**B.    Ripeness**

Second, "a claim is ripe when the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 261 (7th Cir. 1995) (quotations omitted). "[W]hether a party can seek pre-enforcement review of a statute or regulation . . . appears to turn on two criteria: (1) the hardship to the plaintiff of denying pre-enforcement review and (2) the fitness of the issues for judicial review." *Smith v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994).  The Town contends that this matter is not yet ripe because CM and Miller have yet to provide "complete" applications.

But these deficiencies are easily remedied, as the Town has essentially conceded.  Indeed, the Town at the hearing indicated that it would be compelled to issue both the ABL and ABEL upon submission of these simple corrections (*see, e.g.*, Filing No. 19 at 10 ("[A]s of this date, the Town has not received a completed application for an adult business license from CM.  The [Town] has not issued *any* decision besides informing CM that its application is not complete. The Town has not *denied* CM a temporary license—it has simply not issued a temporary license to CM on its incomplete application. The claim is unripe because there is no final decision of the government entity.") (emphasis in original)).  In short, the Court finds that "(1) the hardship to [CM] of denying pre-enforcement review" is significant because CM is left in operational limbo while the Town

5

unilaterally considers the completeness of the applications and that "(2) the fitness of the issues for judicial review" is well-founded when the Town has provided CM and the Court with the precise application deficiencies requiring correction. *See Smith*, 23 F.3d at 1141.

## C. TRO

The standards that apply to preliminary injunction orders also apply to temporary restraining orders. *Loveless v. Chi. Bd. of Election Comm'rs*, 2004 U.S. Dist. LEXIS 18832, at *6 (N.D. Ill. Sep. 8, 2004). To obtain a temporary restraining order, the moving party has the burden of showing that "it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that issuing an injunction is in the public interest." *Grace Schs. v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). A temporary restraining order "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); see also *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (granting preliminary injunctive relief is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it").

Having resolved the preliminary justiciability issues, the party seeking a TRO—here, CM— must demonstrate that "(1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate';[1] and (3) it has some likelihood of prevailing on the merits

---

[1] No one seems to contest, and the Court finds, that legal remedies are inadequate at this juncture in this action (*see, e.g.*, Filing No. 5 at 34).

6

of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)).

The Town takes the third prong first, arguing that "[n]one of the grounds asserted justifies extraordinary relief." (Filing No. 19 at 12.) Finding that the procedural due process claim under the Fourteenth Amendment suffices to resolve this prong, the Court will limit its analysis to this contention.[2] "A procedural due process claim involves a two-step analysis: 'First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due.'" *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (quoting *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1020 (7th Cir. 2000)). The Town focuses on the first prong,[3] maintaining that "CM's due process claim has no foundation because CM has not filed a completed application for an adult business license. The filing of a completed application is the necessary predicate to any claim for a temporary license." (Filing No. 19 at 13.)

But, as described above, completed applications for both an ABL and an ABEL are now easily attainable (and seemingly forthcoming) with the guidance provided from the Town, which the Town ostensibly concedes the completion of which would lead to a likelihood of success on the merits, at least as it pertains to the issuance of a *temporary* ABL. *Cf. id*. at 14 ("Because neither CM nor Miller has filed a completed license application, the due process claims do not have a likelihood of success on the merits and cannot justify any temporary emergency relief."); *see also Kraushaar v. Flanigan*, 45 F.3d 1040, 1048 (7th Cir. 1995) ("[C]ourts will find a liberty interest only if the state's statute or regulation uses language of an unmistakably mandatory character,

---

[2] CM also brings First Amendment claims (*see* Filing No. 1 at 17–22).

[3] As for the second prong, CM maintains that it "finds itself in the unique process-less twilight zone." (Filing No. 5 at 20.) Absent rejoinder from the Town, the Court, for reasons similar to those explained in the above "standing" section, tends to agree. *See, e.g.*, *Zebulon Enterprises, Inc.*, 438 F. Supp. 3d at 890–91.

requiring that certain procedures shall, will or must be employed, and contains substantive standards or criteria for decisionmaking as opposed to vague standards that leave the decisionmaker with unfettered discretion.") (quotations omitted).

Relatedly, the Town contends that CM will not suffer an irreparable injury because it "has not carried its burden of showing a likelihood of success on its constitutional claims." (Filing No. 19 at 16.) But, as described above, CM is prepared to commence business within twenty-four hours of receipt of the requisite temporary licenses. And, absent haste, the new ordinance would ostensibly exclude operation at this location altogether (*see* Filing No. 5 at 26).

The Court, having determined that CM has made its initial three-part showing, now

> must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it. If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor. This balancing process also considers the public interest, or the effects the preliminary injunction—and its denial—would have on nonparties.

*Speech First, Inc.*, 968 F.3d at 637. The Town contends that a TRO would harm the Town's goal of ensuring compliance with applications for ABLs, and the public would be harmed because of the negative effect of flouting rules designed to reduce harmful secondary effects from adult businesses. (Filing No. 19 at 16–17.) However, the simple augmentation of the supporting materials so as to complete the application will render these arguments insignificant. All told, the Court finds that the requisite factors and balancing test demand issuance of a TRO. *See Speech First, Inc.*, 968 F.3d at 637.

## II.     CONCLUSION

The Court, having considered the evidence, briefing, and arguments made at the hearing, finds, and the Town concedes, that upon CM and Miller completing their applications—which require a few easily completed tasks—the Town would be obliged to issue the temporary ABL and

8

ABEL.  As such, the Court **GRANTS** CM's Motion, (Filing No. 4), and **ORDERS** that the Town **shall issue**:

1. CM a temporary ABL immediately upon submission of an updated diagram showing (1) the internal dimensions of the rooms contained in the green blocks at issue and (2) all overhead lighting fixtures; and

2. Miller a temporary ABEL immediately upon submission of (1) a copy of his driver's license and (2) his photograph.

This TRO shall **remain in effect for fourteen (14) days** after the date of issuance, or until any earlier additional order of the Court, or until a later date if Defendants consent to a longer extension[4].  Considering the evolving nature of the applicable zoning and licensing schemes, the Court constrains its decision to CM's request for the Court to order the Town to issue temporary licenses.  *See id.* at 1 (requesting that the Court also "enjoin[ ] Defendants from applying the licensing requirements of CZO, § 60-80 against Plaintiff or its employees").  Any argument pertaining to the applicability of the ordinances as they relate to non-temporary licensing (including so-called "grandfathering" of ordinances) may be addressed, if necessary, at a later time.

**SO ORDERED.**

Date: 9/7/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[4] The Federal Rules of Civil Procedure do not permit a temporary restraining order to exceed 14 days without good cause, and even then, it may not exceed 28 days. Fed. R. Civ. P. 65(b)(2); *see also Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 946 (7th Cir. 2006). Although the Court could find no precedent directly on point concerning the 14-day limit on TROs that have had formal notice to the defendant and a hearing, the Seventh Circuit has held that "the language of Rule 65(b)(2) and the great weight of authority support the view that 28 days is the outer limit for a TRO without the consent of the enjoined party, *regardless of whether the TRO was issued with or without notice.*" *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844 (7th Cir. 2012) (emphasis added).

DISTRIBUTION:

Grace B. Atwater
KAMMEN & MOUDY
grace@kammenlaw.com

Matthew J. Hoffer
SHAFER & ASSOCIATES, P.C.
matt@bradshaferlaw.com

Joshua S. Moudy
KAMMEN & MOUDY
josh@kammenlaw.com

Scott D. Bergthold
LAW OFFICE OF SCOTT D. BERGTHOLD PLLC
sbergthold@sdblawfirm.com

Charles Gregory Fifer
APPLEGATE FIFER PULLIAM LLC
gfifer@afpfirm.com