## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| CLARKSVILLE MINISTRIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00135-TWP-DML |
| | ) |
| TOWN OF CLARKSVILLE, INDIANA, | ) |
| TOWN OF CLARKSVILLE BUILDING | ) |
| COMMISSION, and | ) |
| RICK BARR in his Official Capacity as the Town | ) |
| of Clarksville's Building Commissioner, | ) |
| | ) |
| Defendants. | ) |

### ENTRY ON MOTIONS

This matter is before the Court on an Emergency Motion to Alter or Amend September 14, 2021 Order filed by Defendants Town of Clarksville, Indiana; Town of Clarksville Building Department; and Rick Barr, in his Official Capacity as the Town of Clarksville's Building Commissioner (collectively, the "Town") (Filing No. 30) and an Emergency Motion to Extend Temporary Restraining Order For 14 Days filed by Plaintiff Clarksville Ministries, LLC ("CM") (Filing No. 36), which the Court has granted. (*See* Filing No. 43).

At the outset, the Court agrees, lamentably, with CM that "the parties' and the Court's time has been dedicated toward emergency motion practice relating to the [Temporary Restraining Order ("TRO")] entry." *Id.* at 2. This case has involved myriad "emergency" filings and responsive briefing requiring urgent attention from this extremely busy Court. *See* Sen. Todd Young, *Op-ed: Indiana's federal courts, some of the most overworked in the U.S., need more judges*, INDIANAPOLIS STAR, Jul. 9, 2020, https://www.indystar.com/story/opinion/2020/07/09/op-ed-indianas-federal-courts-some-most-overworked-u-s-need-more-judges/5389256002/ ("[I]n 2019, the judges in the Southern District of Indiana each had over 1,100 cases, which is almost three

times the recommended number."). This type of motions practice—where, just as the Court issues a ruling, a party files an emergency motion—drains Court resources from other vital needs, compounding this District's ongoing judicial emergency. That said, for the following reasons, the Town's Motion is **denied** and CM's Motion is **granted**.

## I.     DISCUSSION

### A.     The Town's Emergency Motion to Alter or Amend September 14, 2021 Order

Pertinent here, the Town moves the Court to "narrow the language of the September 14 Order which, read broadly, enjoins the Town from enforcing an ordinance that Plaintiffs have not challenged and that the Court has not evaluated." (Filing No. 30 at 1.) Specifically, the Town argues that the Court's September 14 Order is overly-broad because it enjoins the Town from enforcing the "sexually oriented business regulations in Chapter 117"—which was amended on September 2, 2021—"of the Clarksville Municipal Code, including Chapter 117's licensing regulations applicable to sexually oriented businesses and their employees." (Filing No. 31 at 4.) Because "Section 117.10(A) and (B) requires sexually oriented businesses and their employees to have a license 'issued under this chapter' to lawfully operate, or work at, a sexually oriented business in the Town of Clarksville," CM cannot lawfully operate when its license was issued pursuant to Clarksville Zoning Ordinance § 60-80. *Id.* at 5. The Town contends, because CM has not challenged Chapter 117, it "is not entitled to an injunction against" this regulation. *Id.*

CM responds that Chapter 117 was amended "upon minimal notice and was calculated to comply with the law while escaping actual notice." (Filing No. 38 at 9 (emphasis removed).) And at the September 3, 2021 hearing on CM's TRO request, the Town "referenced changes to Ch. 117 in the present participle—describing a process underway" and "sidestepped the Court's question about grandfathering and provided an abstruse response about having passed amendments to Chapter 117." *Id.* (citations removed). In sum, the Town's "position is that CM cannot legally

2

operate due to the changes to Chapter 117. . . . [and] were well aware of that on September 3, 2021, . . . but decided, for strategic reasons, not to fully disclose that information to the Court." *Id.* Moreover, "[i]f the Town truly believed that the quietly-enacted September 2, 2021, amendments . . . would effectively moot the emergency relief Plaintiff sought, it was incumbent on the Defendants to squarely place that issue before the Court." *Id.* at 10.

In reply, the Town, among other things, contends that "[t]he wording of the TRO was too broad, such that it encompassed a decision outside the adversarial issues presented to the Court by the parties." (Filing No. 40 at 3 (citation removed).) Here, "the Chapter 117 licensing amendments are not before the Court in any pleading," and "the Town *did* tell the Court at the September 3 hearing that those amendments had been passed." *Id.* at 4. The following is the extent of the Town's discussion concerning the September 2, 2021 amendments to Chapter 117 at the September 3, 2021 hearing:

> [T]he city council did that, they adopted that amendment to the Chapter 117 ordinance to implement sexually-oriented business licensing there last -- yesterday. They did that at a notice meeting. In fact, the notice was on the door. . . . Mr. Hoffer and I walked by the notice that set the meeting for last night, and they did take licensing procedures and put them in the Chapter 117 ordinance, so -- which is not a zoning ordinance. So they -- to get the benefits of -- you know, so we can't make a determination on whether they're grandfathering -- grandfathered, but they would be grandfathered if they satisfied all legal requirements.

(Filing No. 32 at 44–45.)

On August 30, 2021, the Court relied on the Town's representation that a TRO issued before the September 7, 2021 Town Council meeting (where amendment to § 60-80 was to occur) would preserve CM's rights, if the Court so held. The next day, August 31, 2021, the Town set a "special" Town Council meeting for September 2, 2021—the day *before* the Court's TRO hearing. At that September 2 meeting, the Town Council amended Chapter 117 in such a way that CM would not be permitted to open, even if it completed the process it embarked upon weeks earlier on August

13, 2021. This maneuver, in the Town's view, effectively nullified the TRO request: How could CM *ever* become licensed if it were limited to challenging the also changing § 60-80? The Court would not have set a hearing for September 3 if it had known that the Town would in turn schedule a special meeting for the day before that would render the hearing, in the Town's view, pointless. It is of no moment that an additional meeting was held after the Court set the hearing, but before it occurred (*see* Filing No. 40 at 6 ("CM *completely* skips the September 1 Plan Commission meeting.") (emphasis in original)).

The Court has broad discretion in determining the scope of injunctive relief and "abuses its discretion where the scope of injunctive relief exceeds the extent of the plaintiff's protectible rights." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (quotation omitted). Here, the Court determines that enjoining application of Chapter 117's licensing regulations, as added on September 2, 2021, against CM is *not* overly broad in that it does not impose relief exceeding the extent of CM's protectible rights. *See id.* In fact, this is the only way the TRO can "be effective," *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010), especially after, as the Court has already done, weighing the likelihood of success on the merits, the likelihood of irreparable harm, the balance of the equities, and the public interest, *see Grace Schs. v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). There is clearly "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint," *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994), when CM has alleged from the start that the Town's regulatory schemes have dynamically transformed to curtail the business's operation. Accordingly, the Court **denies** the Town's Motion insofar as it seeks narrowing its scope to solely enjoining application of § 60-80.

**B.**   **CM's Emergency Motion to Extend Temporary Restraining Order For 14 Days**

CM asks the Court to extend "the TRO Entry, as modified by the 2d TRO Entry, until 4:00 p.m. on October 5, 2021 or such later time agreed by the parties." (Filing No. 36 at 2.) In response,

the Town argues that "there is nothing about the September 7 TRO to extend because the only act commanded by it has been accomplished." (Filing No. 40 at 2.) Additionally, the Town contends that it "has honored" the Court's September 14 Order because it "has not issued any citations" and "is not going to issue any citations *under any of the legal provisions actually challenged in this lawsuit*." *Id.* (emphasis added). Clearly, the Town is hinting that it intends to enforce Chapter 117's licensing regulations against CM. But, as described at length above, the Town is enjoined from enforcing against CM those regulations as added on September 2, 2021. The Court, then, **grants** CM's Motion as there is good cause to do so; namely, that this will give the Court and the parties time to "allow the dust to settle" and to consider how this matter should proceed to the preliminary injunction stage (Filing No. 38 at 15; *see* Fed. R. Civ. P. 65(b); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012)).

## II.    <u>CONCLUSION</u>

For the reasons described above, the Court **DENIES** the Town's Emergency Motion to Alter or Amend September 14, 2021 Order (Filing No. 30) and **GRANTS** CM's Emergency Motion to Extend Temporary Restraining Order For 14 Days (Filing No. 36). The TRO Entry, as modified, is **EXTENDED** until **4:00 p.m. on October 5, 2021**. In addition, the Court **GRANTS** the request for a status conference concerning deadlines and a hearing on a request for preliminary injunctive relief—which notably, has not yet been filed. The parties shall contact the Magistrate Judge to schedule said conference if such motion is filed.

**SO ORDERED.**

Date:    9/21/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

5

Distribution:

Grace B. Atwater
KAMMEN & MOUDY
grace@kammenlaw.com

Scott D. Bergthold
LAW OFFICE OF SCOTT D. BERGTHOLD PLLC
sbergthold@sdblawfirm.com

Charles Gregory Fifer
APPLEGATE FIFER PULLIAM LLC
gfifer@afpfirm.com

Matthew J. Hoffer
SHAFER & ASSOCIATES, P.C.
matt@bradshaferlaw.com

Joshua S. Moudy
KAMMEN & MOUDY
josh@kammenlaw.com

Zachary Michael Youngsma
Shafer & Associates, P.C.
zack@bradshaferlaw.com