## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| CLARKSVILLE MINISTRIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00135-TWP-KMB |
| | ) | |
| TOWN OF CLARKSVILLE, INDIANA, | ) | |
| TOWN OF CLARKSVILLE BUILDING | ) | |
| COMMISSION, and RICK BARR, | ) | |
| Individually and in his Official Capacity as the | ) | |
| Town of Clarksville's Building  Commissioner, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed by Defendants Town of Clarksville, Indiana, Town of Clarksville Building Commission, and Rick Barr, in his official capacity as the Town of Clarksville's Building Commissioner (collectively, the "Town") (Filing No. 71).  Plaintiff Clarksville Ministries, LLC ("CM") initiated this civil rights action alleging the Town violated the First and Fourteenth Amendments to the United States Constitution by failing to issue it a temporary Adult Business License and a temporary adult business employee license in accordance with a Town Ordinance.  (Filing No. 1).[1]  The Town argues the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under the *Younger v. Harris* or *Colorado River* abstention doctrines,[2] due to the

---

[1] CM's attempts to amend its Complaint on two sperate occasions were denied because of its failure to satisfy Federal Rule of Civil Procedure Rule 8, (Filing No. 57; Filing No. 85), so the original Complaint (Filing No. 1) remains the operative Complaint in this action.

[2] The United States Supreme Court has recognized four main categories of abstention named after the cases that gave rise to them: *Pullman*, *Burford*, *Younger*, and *Colorado River*.  *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Town's ongoing enforcement action against CM in a state court proceeding. The Town also seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), because the Complaint fails to state a claim upon which relief can be granted (Filing No. 72; Filing No. 84). Alternatively, the Town argues the Court should stay these proceedings. *Id.* For the reasons set forth below, the Court grants the Motion to Dismiss.

## I. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

Under established abstention doctrines "a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). A motion to dismiss on abstention grounds fits best under Federal Rule of Civil Procedure 12(b)(1). *Nicole K. by next friend Linda R. v. Stigdon*, 2020 WL 1042619 (S.D. Ind. Mar. 3, 2020). Motions under Rule 12(b)(1) challenge the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc); see also *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980) (concluding "[t]he plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof.").

While the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff, *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995), the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*

B.    **Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When deciding a Rule 12(b)(6) motion, the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In its Motion to Dismiss, the Town argues that CM's Complaint is subject to abstention because "for nearly three years" it has been engaged in an ongoing enforcement action against CM in an underlying state court proceeding--concerning Theatre X, and its landlord entity, AMW Investments, Inc. ("AMW"), and operating entity, Midwest Entertainment Ventures, Inc. ("Midwest)--and because the state court proceeding presents extraordinary circumstances justifying abstention. (Filing No. 72-1.) While CM's Complaint is devoid of any facts concerning the underlying state court proceeding the Court takes judicial notice of, and incorporates certain

3

factual recitation, from documents filed on the docket of the state court proceeding.[3]  *See Daniel v. Cook County*, 833 F.3d 728, 743 (7th Cir. 2016) (finding that a court may take judicial notice of an action of other courts or the contents of filings in other courts not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.)

The Court will first address the procedural background relating to the state court proceedings, before turning to the facts of the instant lawsuit.

A.   **Midwest's ABL Revocation**

In 2018, AMW was the owner of the premises upon which Midwest operated an adult arcade and adult theater under the name "Theatre X" pursuant to an ABL and ABEL issued to Midwest and its employee by the Town.  (Filing No. 1 at ¶ 36; Filing No. 19-2.)  Unbeknownst to the Town, more than twenty improper openings, or "glory holes", were placed in the walls between Theatre X's booths that allowed people in adjoining booths to engage in sexual acts. (Filing No. 19-1 at 4-5.) In October 2018, several of Theatre X's patrons were arrested for engaging in sexual acts and, soon thereafter, the Town conducted an inspection and suspended Midwest's ABL for violations stemming from electrical issues and the glory holes.  *Id*. at 2-3.  Midwest resolved the electrical issues but did not cover up the glory holes and continued operating Theatre X.  *Id*. at 6. Ultimately, Midwest corrected the violations and on November 19, 2019, the license suspension was lifted.  *Id*.

In January 2019, more of Theatre X's patrons were arrested for engaging in sexual acts.  *Id*. The Town issued a 'notice of intent to revoke' Midwest's ABL for operating Theatre X while its

---

[3] *See* Case No. 10C04-1905-PL-00051 and styled *In Re: The Administrative Appeal of the Notice Issued by the Clarksville Building Commissioner for the Intended Revocation of an Adult Business License Issued to Theatre X for Property Located at 4505 Highway 31 E, Clarksville Indiana, Midwest Entertainment Ventures, Inc., (d/b/a/ Theatre X) v. The Town of Clarksville, Planning Commission for the Town of Clarksville, and Rick Bar, Town of Clarksville Building Commissioner.*.

license was suspended and for allowing "acts performed for sexual gratification on the licensed premises." *Id*. at 6-7.  Midwest appealed the license revocation, and the Clarksville Town Council held an evidentiary hearing and voted unanimously to revoke Midwest's ABL in connection with Theatre X.  (Filing No. 67-5.)

**B.**    **Midwest's Appeal of its ABL Revocation**

Midwest's appeal of the Clarksville Town Council's decision soon followed in the Circuit Court.  (Filing No. 67-6.)   The Town filed counterclaims against both Midwest and AMW (collectively, the "Counter Defendants") for "operating or maintaining Theatre X in violation of certain provisions of the Clarksville Zoning Ordinance" and sought monetary fines,[4] a temporary restraining order, a preliminary injunction, and a permanent injunction.  (Filing No. 67-7.)  The Counter Defendants petitioned the Circuit Court to dismiss the case, but that motion was denied, (Filing No. 67-8), and a separate order was entered granting the Town a preliminary injunction[5] against the Counter Defendants "as well as their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, from engaging in or allowing [certain] acts at 4505 E. Highway 31 in Clarksville, Indiana." (Filing No. 19-2 at 10.)

The Circuit Court found AMW, no less than Midwest—with whom AMW shares an address in Durand, Michigan—responsible for operations at Theatre X (Filing No. 67-8 at 7-8). The Circuit Court determined that AMW was not merely a lessor as in a typical commercial landlord-tenant relationship but that "[d]iscovery may reveal additional facts showing the depth of

---

[4] Case No. 10C04-1905-PL-00051, "Town of Clarksville Motion for Imposition of Fines," dated December 12, 2019, and "Order Regarding Motion for Imposition of Fines," dated February 25, 2020 (Filing No. 67-9; 67-10).

[5] Case No. 10C04-1905-PL-00051, "Order Granting Preliminary Injunction," dated November 21, 2019.

relationship between AMW and [Midwest] in the Theatre X enterprise, as the Town has suggested that the principals in the two corporations have been long-time adult business partners beyond the Clarksville business." *Id*. The Counter Defendants appealed[6] the Circuit Court's order granting the preliminary injunction, and in October 2020, the Indiana Court of Appeals affirmed the preliminary injunction order (Filing No. 67-11). Approximately five months later, in March 2021, the Indiana Supreme Court denied transfer[7] (Filing No. 67-12).

**C.    CM Begins Leasing Theatre X and Buys Midwest's Assets**

On August 3, 2021, CM, was created as a limited liability company and, despite its name, sought to operate an adult business on the Premises.  (Filing No. 67-15.)[8]  Two days later, on August 5, 2021, CM began leasing the Premises, or Theatre X, and, a day later bought all of Midwest's "assets, equipment, inventory, and [the] good will of the business." (Filing No. 1 at 11; Filing No. 68-16.)  CM subsequently submitted a complete ABL and ABEL application for the 2021 calendar year, (Filing No. 1 at ¶ 40-46), but the Town did not issue CM an ABL or its employee an ABEL as the local ordinances required, but instead proposed certain amendments to the zoning laws regulating adult businesses which disqualified the Premises as a lawful location

---

[6] Case No. 19A-PL-02962, and styled *Midwest Entertainment Ventures, Inc. (d/b/a/ Theatre X), and AMW Investments, Inc., v. The Town of Clarksville, Planning Commission for the Town of Clarksville, and Rick Barr, Town of Clarksville Building Commissioner*. *See also Midwest Entertainment Ventures, Inc. v. Town of Clarksville*, 158 N.E.3d 787(Ind. Ct. App. 2020).

[7] Since the Indiana Supreme Court denied transfer, the Town sought a hearing on its pending (1) 2020 motion to compel discovery against AMW and Midwest, and (2) motion to affirm the 2019 revocation of Theatre X's adult business license and begin the one-year closure of the business. Following a hearing, the Circuit Court, on August 12, 2021, granted the Town's motion to compel production and affirmed Midwest's ABL revocation in connection with Theatre X (Filing No. 67-13; Filing No. 67-14).

[8] A search on the Indiana Secretary of State's website reveals a corporation filing for Clarksville Ministries LLC, of which the Court takes judicial notice, which indicates that CM was created on August 3, 2021, as a domestic limited liability company by the sole manager Michael Sanchez, with its principal office being located at 4505 US Highway 31, Jeffersonville, IN 47130. https://bsd.sos.in.gov/PublicBusinessSearch/BusinessInformationFromIndex

for the operation of an adult business and "there exists no parcel of land within Clarksville where an Adult Business may operate."  (Filing No. 1 at ¶ 63-80.)

D.   **CM Files this Federal Lawsuit**

On August 27, 2021, CM filed suit in this federal court alleging that the First and Fourteenth Amendments to the United States Constitution were violated when the Town infringed on its free speech rights: (1) by failing to issue CM a temporary Adult Business License ("ABL"), (2) by failing to issue its employee a temporary Adult Business Employee License ("ABEL"), and (3) by proposing an amendment to the zoning laws so as to disqualify the property located at 4505 Highway 31 East, in Clarksville, Indiana ("Theatre X" or "the Premises")[9] as a lawful location for the operation of an adult business.  *Id*.  (Filing No. 1.) CM sought an emergency temporary restraining order,[10] a preliminary injunction, nominal damages, compensatory damages, special damages, and punitive damages.  *Id*. at 22-23.

Approximately a week after CM's Complaint was filed, on September 2, 2021, Midwest sought voluntary dismissal of its claims in the Clark Circuit Court (the "Circuit Court") because it was "ceasing to operate … its business," and the Circuit Court granted that motion with prejudice (Filing No. 67-16).  The Circuit Court, however, issued a subsequent order clarifying that while Midwest's claims were dismissed, "the Town's [counter] claims against the [Counter Defendants] remain[ed] pending for adjudication."[11] Several months later, in January 2022, the Town was

---

[9] While the parties interchangeably refer to the adult business located at 4505 Highway 31 East, Clarksville, Indiana premises as Theatair X or Theatre X, the Court refers to said premises as Theatre X.

[10] On September 7, 2021, this Court granted CM's motion for a temporary restraining order and ordered the Town to issue "CM a temporary ABL…" and issue "Timothy Miller a temporary ABEL…" once certain deficiencies in the respective applications were corrected (Filing No. 25). On September 21, 2022, the Court extended the temporary restraining order (Filing No. 43).

[11] Case No. 10C04-1905-PL-00051, "Order Granting Motion to Amend and Clarify Order of Dismissal," dated September 13, 2021. A review of the state court docket reflects that the Amended Counter Claims are still pending.

granted permission by the Circuit Court  to add "claims for the same relief, under the same 2019 regulations, against AMW's and Midwest's sole principals (Jason Mohney and Douglas Marks, respectively), and against Theatre X's current operating entity, Clarksville Ministries, LLC ("CM"), and its principal, Michael Marie Sanchez" (the "Amended Counter Claims").[12]

The Town then filed the instant Motion to Dismiss this case pursuant to Rules 12(b)(1) and (6), arguing that dismissal is warranted under both the *Younger* or *Colorado River* abstention doctrine or, alternatively, the Court should stay these proceedings pending resolution of the Town's Amended Counter Claims in the Circuit Court (Filing No. 71; Filing No. 72). CM filed a response, and the Town filed a reply (Filing No. 78; Filing No. 84).

### III.  DISCUSSION

The Town argues that CM purports to be the "new" operator of Theatre X in Clarksville, but in reality "CM is simply a new entity from the Deja Vu-related individuals who have operated Theatre X illegally for years—Douglas Marks of Midwest Entertainment Ventures, Inc. and Jason Mohney of AMW Investments, Inc." (Filing No. 72 at 1).  The Town contends that this action, is CM's "attempt to evade an injunction and a one-year bar from operating an adult business." *Id*. The Town seeks dismissal of CM's Complaint under both Rules 12(b)(1) and 12(b)(6). Specifically, the Town argues this Court should abstain under *Younger* because the underlying state court proceeding qualifies as a (1) quasi-criminal civil enforcement proceeding, (2) the state court proceeding is judicial in nature and ongoing, (3) regulating the use of land in Indiana

---

[12] Case No. 10C04-1905-PL-00051, "Town of Clarksville's Motion to Amend Counterclaim to Add Parties," dated January 9, 2022, "Order Granting Motion to Amend Counterclaims," dated January 11, 2022, and "First Amended Counterclaims" dated January 18, 2022. Since being added as a party in January 2022, CM has filed motions for sanctions, moved to quash the Town's subpoenas, filed an application to change judge, filed a motion to extend time to respond to discovery, and its attorneys have appeared. The Circuit Court recently entered an order granting the Town's motion to compel discovery from CM.

constitutes an important state interest, (4) CM can assert its constitutional grievances in the state court proceeding, and (5) there are no 'extraordinary circumstances' that would preclude abstention.  Also, in light of the parallel state court proceeding, the Town asks this Court to abstain under *Colorado River*.  Alternatively, the Town requests that this Court stay the federal action until the state court proceeding is resolved.

CM Categorically denies the Town's accusations that it is s related to the previous operator of Theatre X, Midwest or its landlord AMW. (Filing No. 75-1).  CM does not dispute that the underlying state court proceeding is a 'quasi-criminal civil enforcement proceeding' nor that regulating the use of land in Indiana constitute an important state interest. Instead, CM argues that (1) the state court proceeding is not ongoing for purposes of *Younger*, (2) CM cannot raise its constitutional grievances in the state court proceeding, and (3) 'extraordinary circumstances' weigh against abstaining under *Younger*.  CM also asserts that the state court proceeding is not sufficiently parallel to trigger abstention under *Colorado River*.

The Court concludes that abstention through dismissal of this action is appropriate.

A.   **Whether the *Younger* Abstention Doctrine Applies**

CM argues that *Younger* is inapplicable and, even if it were, there are extraordinary circumstances—namely bad faith and harassment—which weigh against abstention (Filing No. 78). The Court disagrees with CM on both points.

While federal courts have a "virtually unflagging" obligation to hear and decide cases within its jurisdiction, *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), principles of comity and federalism dictate that a federal court will not intervene in ongoing state court proceedings absent certain extraordinary circumstances. *Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (citing *Younger*, 401 U.S. at 37).  Limiting the intervention of the

federal courts preserves the "institutional autonomy of state judicial processes by limiting attempts by litigants to obtain federal declaratory or injunctive relief on constitutional grounds where such relief may interfere with certain types of ongoing state proceedings in which they are involved, and which provide an adequate opportunity to raise the constitutional claims." *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) (quoting Laurence H. Tribe, *American Constitutional Law* § 3–28, at 569–70 (3d ed. 2000)).

The *Younger* abstention analysis proceeds in two sequential stages. The first stage examines whether the underlying state court proceeding falls within one of three "exceptional" *Younger* categories of cases: (1) state criminal prosecutions, (2) quasi-criminal civil enforcement proceedings, or (3) "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.  The second stage examines the *Middlesex* factors, which requires federal courts to abstain from interference in ongoing state proceedings when they are "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims," (4) so long as no extraordinary circumstances [—like bad faith or harassment—] exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (citing *Middlesex*, 457 U.S. at 436–37); *see also FreeEats.com v. Indiana*, 502 F.3d 590, 596-97 (7th Cir. 2007).

### 1.    The *Younger* Exceptional Category

The Town argues that the state court proceeding falls into the second exceptional *Younger* category—quasi-criminal civil enforcement proceeding—and CM has not challenged this contention nor argued that the proceeding does not fit into any of the other exceptional *Younger* categories.  *See Forty One News*, 491 F.3d at 665 (concluding "[t]here is no question that the quasi-criminal prosecution of the violation of an ordinance is an adequate state proceeding for the

purposes of *Younger*: we have held so in the past..."); *see also Ciotti v. County of Cook*, 712 F.2d 312, 313 (7th Cir. 1983) (finding that a nuisance action brought by a county against an adult bookstore for violating certain zoning ordinances constituted a quasi-criminal civil enforcement action). This Court agrees that the Town's license revocation proceeding qualifies as a quasi-criminal civil enforcement action under *Younger*. The Court now turns to the *Middlesex* factors.

**2.      Applying the *Middlesex* Factors**

CM focuses its attention on the first and third prongs of the *Middlesex* analysis. Specifically, CM argues that the state court proceeding is not ongoing, does not offer an adequate opportunity for review of constitutional claims, and extraordinary circumstances exist to preclude abstention under *Younger*. The Town argues persuasively that an application of the *Middlesex* factors weighs in favor of abstention, and no extraordinary circumstance exist.

**a.      The First *Middlesex* Factor**

CM concedes, and the Court agrees, that the state court proceeding is judicial (Filing No. 67-5; Filing No. 67-6). *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986); *see also Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 183 (3d Cir. 2014) (finding that the "hearing was unquestionably judicial in nature as it afforded [the appellant] with an opportunity to be heard, the right to be represented by counsel, and the right to present evidence and witnesses on his behalf."). CM mainly relies on *New Albany DVD, LLC v. City of New Albany, Inc.*, and the Town relies on *Huffman v. Pursue, Ltd.*, to support its respective arguments on whether the state court proceeding is ongoing. 420 U.S. 592 (1975); 350 F.Supp.2d 789 (S.D. Ind. 2004).

In *New Albany DVD*, the district court determined that *Younger* did not apply because the state court proceeding was not ongoing and that extraordinary circumstances were present to

11

prevent the court from abstaining.  350 F. Supp. 2d at 793-96.  New Albany DVD initially filed a federal action challenging the constitutionality of a city's refusal to conduct a final inspection, placing a six-month moratorium on new adult businesses and amending the adult zoning ordinances to forbid any "sexually oriented business" at the site.  *Id*. at 791.  The city then filed a state court declaratory action; the business then removed that claim to federal court, and, in deciding not to abstain, the district court found that the state court proceeding was not ongoing because it was filed later in time to the federal action.  *Id*. at 793.  The court reasoned that the federal action had passed beyond the "embryonic stage" since the court had already ruled on the motion for preliminary injunction.  *Id*.  The court also found that the

> facts of the case [were] susceptible to an inference of bad faith prosecution on the part of the City, which inference, together with our view that the first element of the *Younger* doctrine has not been fully satisfied, leads us to conclude that abstention in the federal lawsuit is not appropriate.

*Id*. at 796.

In *Huffman*, the Supreme Court determined that *Younger* may apply to a subsequent operator of an adult business.  420 U.S. at 611.  There, a city initially filed a state court nuisance action against the original operator of an adult theater.  *Id*. at 592.  However, after the state court announced its ruling, but before it entered the closure order, a new operator took over the leasehold interest.  *Id*.  Rather than appealing that judgment within the state court system, the new operator filed suit in the district court alleging the nuisance statute violated the First Amendment.  *Id*. at 598–99.  The district court agreed, permanently enjoining a portion of the state court's judgment. *Id*. at 599.  On appeal, the Supreme Court found that the district court should have applied the *Younger* doctrine in determining whether to proceed to the merits and should not have entertained the action unless the current operator established that early intervention was justified under the exceptions recognized in *Younger*.  *Id*. at 611.

Three months after *Huffman*, the Supreme Court decided *Hicks v. Miranda* by holding that *Younger* barred the claims of two theater owners who sought to enjoin enforcement of a state obscenity statute.  422 U.S. 332, 348–49 (1975).  Although no state proceedings were pending against the theater owners at the time the federal complaint was filed, criminal charges had been filed against two employees of the theater, and authorities had seized four copies of the allegedly obscene film.  *Id*.  The court concluded that *Younger* could not be avoided under these circumstances because the interests of the theater owners and the employees "were intertwined [,] and ... the federal action sought to interfere with the pending state prosecution."  *Id*.

Six days later, the Supreme Court reaffirmed that same principle in *Doran v. Salem Inn, Inc.*, by reiterating that there may be some circumstances where plaintiffs "are so closely related" that abstention will be warranted although not all plaintiffs are subject to the pending state proceeding.  422 U.S. 922, 928 (1975).  *Doran* involved a suit by three bar owners who sought to enjoin enforcement of a local ordinance prohibiting topless dancing.  *Id*. at 924.  Although all three bar owners had similar business interests and were represented by the same counsel, only one of the owners had been criminally prosecuted in state court.  *Id*. at 928–30.  Because the plaintiffs were otherwise "unrelated in terms of ownership, control, and management," the court declined to apply *Younger* to the two bar owners who had not been subject to state prosecution.  *Id*. at 928– 29.

While both *Hicks* and *Doran* arguably focus on the fact of joint ownership and control, neither decision limits the application of *Younger* to cases where the parties are financially related or linked by mutual management.  *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003).  Courts have consistently recognized that while "[c]ongruence of interests is not enough" by itself to warrant abstention, where the plaintiffs' interests are so inextricably

intertwined that "direct interference with the state court proceeding is inevitable," *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state proceeding.  *See, e.g., Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001) (en banc); *see also Cedar Rapids Cellular Tel., L.P., v. Miller*, 280 F.3d 874, 881–82 (8th Cir. 2002) (noting that for *Younger* purposes, "the parties in federal and state court need not be identical where the interests of the parties seeking relief in federal court are closely related to those of [the] parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings").

Here, while the facts of this case do not lend itself to a typical *Younger* analysis, this Court concludes that abstention is warranted when considering the principles of "equity, comity, and federalism."  *See Courthouse News Service v. Brown*, 908 F.3d 1063, 1072-74 (7th Cir. 2018).  The following sequence of events are relevant to the Court's determination of whether the state court proceeding is ongoing: (1) in 2018, the Town commenced license revocation proceedings against the previous operator—Midwest—of Theatre X; (2) Midwest then appealed its ABL revocation; (3) the Town then filed counterclaims against the Counter Defendants—AMW and Midwest—in Circuit Court; (4) in 2019 the Circuit Court then enjoined the Counter Defendants from operating Theatre X and reaffirmed Midwest's ABL revocation; (5) Midwest's voluntarily dismissed its claims in Circuit Court; (6) CM then buys Midwest's assets, begins leasing Theatre X from AMW, and filed this federal action; and (7) The Town added CM as a party in the Circuit Court case. ([Filing No. 67-5](); [Filing No. 67-6](); [Filing No. 67-8](); [Filing No. 67-11](); [Filing No. 67-12]().)

Like *Huffman*, CM began leasing and operating Theatre X after the Town commenced the state court proceedings against the Counter Defendants.  Similar to *Hicks*, there is a close enough relationship between the Counter Defendants, namely AMW and CM.  Like *Hicks*, CM's interests, as the lessee of Theatre X, and as an adult business operating on the Premises are sufficiently

14

intertwined with those of the AMW—the owner of Theatre X—who has always leased the Premises to adult businesses (Filing No. 1; Filing No. 67-14).  Both the federal action and the state court action implicate Theatre X.  *Id*.  Finally, the federal action was "sought to interfere with the pending state prosecution" because the state court proceeding was filed before the federal action, the Town's counterclaims against the Counter Defendants remained pending at the time CM bought Midwest's assets and began leasing Theatre X, and the Circuit Court entered a preliminary injunction against the Counter Defendants with respect to operating Theatre X prior to CM filing this federal action.  *Id*.; *see Hicks*, 422 U.S. at 348–49.  The Court concludes that CM's interests are inextricably intertwined with the interests of the Counter Defendants with respect to Theatre X and, therefore, *Younger* applies.

CM goes on to argue that the Court should not abstain under *Younger* because the federal case has progressed beyond the embryonic stage.  (Filing No. 78 at 6.)  Even if the federal litigation predates the state court proceeding, the Court still concludes that the state court proceeding is ongoing for *Younger* purposes.  In *Ciotti v. County of Cook*, the Supreme Court held that federal proceedings were still in an embryonic stage, and *Younger* applied, because no proceedings of substance had taken place such as "depositions taken, discovery completed, or briefs filed on the issues."  712 F.2d 312, 314 (7th Cir. 1983); *but see Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (concluding that the issuance of a preliminary injunction by a federal court constituted a proceeding of substance).

Here, this federal case is at an embryonic stage because no such proceedings, as described in *Ciotti*, have occurred.  CM's federal action was filed three years after the state court proceeding, and the only proceeding that has occurred here is limited to CM's request for emergency relief on the issuance of a temporary ABL and ABEL (Filing No. 25; Filing No. 43).  Unlike *New Albany*

*DVD*, the current owner and prior operator of Theatre X were subject to numerous adverse Circuit Court rulings for violating city ordinances, including operating on a suspended license, and were enjoined from operating Theatre X.  ([Filing No. 67-8](#); [Filing No. 19-2 at 10](#).)  The Court has not addressed the merits of CM's constitutional challenge, and no preliminary injunction has been issued.  The Court, drawing all reasonable inferences in favor of CM, cannot find that the federal case is beyond its embryonic stage, thus, the Court concludes that the state court proceeding is ongoing for purposes of *Younger*.

The Court is also concerned that this federal case may create the risk of friction and conflicting rulings with the Circuit Court in connection with Theatre X.  The Circuit Court made it clear that, "the Town's [counter] claims against [AMW and Midwest] remain pending for adjudication."  A review of the Circuit Court's docket, as of the date CM began leasing Theatre X and filed suit in this Court, reflects that the Town's counterclaims against the Counter Defendants were still pending.  Since being added as a party in January 2022, CM has filed several motions with the Circuit Court. Notably, on October 4, 2022, the Circuit Court entered an order granting the Town's motion to compel discovery from CM and to allow the Town's suit against them to continue.  After considering the principles of "equity, comity, and federalism," the Court finds that the state court proceeding was and still is ongoing.

### b.   **The Second *Middlesex* Factor**

CM concedes, and this Court agrees, that regulating local land use and zoning issues are "important state interests" for *Younger* purposes.  *Discovery House, Inc. v. Consolidated City of Indianapolis*, 970 F.Supp. 655, 659 (S.D. Ind. 1997).

### c.   **The Third *Middlesex* Factor**

CM contends it cannot raise its constitutional claim in the state court proceeding and that,

[b]ut for the progress of this action, CM would have had no opportunity to open and operate and there would be no basis for CM to advance its claims that it has established a lawful nonconforming use or, for that matter, for the Town to claim CM somehow operated in violation of its ordinances.

(Filing No. 78 at 7.)  The Court disagrees with CM.

The Circuit Court is one of general jurisdiction and has authority to adjudicate CM's constitutional claims against the Town.  I.C. § 33-28-1-2; *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 15 (1987).  "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."  *See 31 Foster Children v. Bush,* 329 F.3d 1255, 1279 (11th Cir. 2003) (quoting *Middlesex*, 457 U.S. at 431).  Thus, a federal court "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Mapes v. Indiana*, 2020 WL 1987260, *2 (S.D. Ind. Apr. 27, 2020) (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. at 15).

Here, the Circuit Court is fully competent to resolve CM's constitutional claims.  CM does not claim that state law clearly bars his constitutional claims, *Middlesex*, 457 U.S. at 432, nor does it identify any viable legal barrier to raising the First Amendment claims in the Circuit Court proceedings.  The Court is further persuaded that the Circuit Court is the best forum to resolve this matter.  The Town's state court proceeding regarding Theatre X began in 2019.  The Clarksville Indiana Town Council, state trial court and state appellate courts have all invested considerable resources in the state court proceeding concerning Theatre X.  Most notably, on October 4, 2022, the Circuit Court entered an order granting the Town's motion to compel discovery from CM and has set a hearing for January 19, 2023, on the Town's motion for default against CM.  This Court is persuaded that this federal case may not only create the risk of friction and conflicting rulings, but also rejects the vital principle that "state courts are co-equal to the federal courts and are fully capable of respecting and protecting" First Amendment rights.  *City of Indianapolis & Marion*

*Cnty. v. H-Indy, LLC*, 166 N.E.3d 347 (Ind. Ct. App. 2021) (holding city violated store's constitutional rights in blocking store opening).

As such, the Court concludes that *Younger* applies and will now determine whether CM has met its burden of proof regarding the alleged *Younger* exception.

### d.    The *Younger* Exception

CM claims the state court proceeding was brought in bad faith or to further harass CM with the goal of forcing the business to close (Filing No. 78 at 6).  The Court again disagrees with CM.

An exception to *Younger* applies when "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman*, 420 U.S. at 611.  This exception exists because the harms posed by bad faith prosecution are both immediate and great, and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights.  *Collins v. County of Kendall, Illinois*, 807 F.2d 95, 98 (7th Cir. 1986) (affirming dismissal under *Younger* where an adult bookstore and its employees claimed a pattern of harassment based on more than 30 obscenity prosecutions, a civil nuisance suit, and searches and seizures of their bookstore); *see also Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir. 1976) (concluding that evidence of multiple prosecutions is not sufficient by itself to support the necessary inference of bad faith and harassment).  "The *Younger* rule, as applied in *Hicks*, […] requires more than a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception." *Grandco Corp.*, 536 F.2d at 203.  This specific evidence must show that state prosecution "was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." *Collins*, 807 F.2d at 99.

Here, CM's claim of bad faith and harassment is not sufficiently supported to undercut the case for *Younger* abstention.  CM claims the following events evidence the Town's bad faith and

harassment of CM: (1) refusing to issue CM a temporary ABL, (2) proposing changes to certain zoning ordinances in response to CM's application, (3) filing a state court proceeding in an effort to have the present suit dismissed, and (4) naming CM's manager, Michael Marie Sanchez, as a defendant (Filing No. 78 at 8).   Viewing the allegations in CM's Complaint in the light most favorable to CM, as the Court must at this stage, the Court nonetheless concludes that CM's Complaint nor its evidence demonstrate that the state court proceeding was brought against CM to retaliate for or to deter the exercise of its constitutional rights.   On the contrary, it is consistent with a good-faith belief on the part of the Town that CM was created to evade certain adverse rulings, including a preliminary injunction, that was issued by the Circuit Court against the previous operator, Midwest, and owner, AMW, of Theatre X.   *Midwest Entm't Ventures, Inc. v. Town of Clarksville*, 158 N.E.3d 787 (Ind. Ct. App. 2020) (upholding the Circuit Court's preliminary injunction against the Counter Defendants). The Town is simply trying to proceed with its protracted litigation concerning the operation of Theatre X.   Regardless, as already discussed, CM is not foreclosed from raising the federal claims in the state court proceeding.

For these reasons, the Court concludes that CM has failed to show that extraordinary circumstances exist to prevent abstention.  The Court now turns to whether dismissal rather than staying these proceedings is appropriate.

**B.** **Whether to Dismiss or Stay the Federal Action**

Finally, upon finding that the Court should abstain, "we are only left with the issue of how to abstain from these claims; by dismissing or merely staying them." *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998).  The pivotal question in making this determination is whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action. *Id.*; *Green v. Benden*, 281 F.3d 661, 667 (7th Cir. 2002) ("A stay is appropriate when a plaintiff is foreclosed

from bringing his damages claims in the state proceeding."). In *Deakins v. Monaghan*, the Supreme Court determined that when *Younger* abstention is required, "the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995) (quoting 484 U.S. 193, 202 n. 6 (1988)); *see, e.g., Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (staying a § 1983 case rather than dismissing it because monetary relief was unavailable to a plaintiff in his defense of ongoing criminal charges). Here, the state court proceeding is not a criminal matter, and CM has not asserted that the Circuit Court is incapable of providing any of the forms of relief which it has requested in the federal action. The Circuit Court clearly has the power to grant CM a temporary restraining order, a preliminary injunction, award monetary damages, and determine whether the Town's actions are constitutional. Consequently, the Court concludes that dismissal, rather than staying CM's federal action, is appropriate here.

Because the *Younger* doctrine is dispositive of this action, the Court need not determine applicability of the *Colorado River* abstention doctrine, and because CM's claims are dismissed on jurisdictional grounds, the Court need not consider the Town's Rule 12(b)(6) motion.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Town's Motion to Dismiss ([Filing No. 71](#)) **GRANTED**. Plaintiff Clarksville Ministries, LLC's Complaint is **dismissed without prejudice** to re-raising its claims before the appropriate state court.

A final judgment will enter in a separate entry.

**SO ORDERED.**

Date:   <u>1/17/2023</u>

<span style="float:right">

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

</span>

DISTRIBUTION:

Grace B. Atwater
KAMMEN & MOUDY
grace@kammenlaw.com

Joshua S. Moudy
KAMMEN & MOUDY
josh@kammenlaw.com

Luke Lirot
Luke Lirot, P.A.
luke2@lirotlaw.com

Scott D. Bergthold
LAW OFFICE OF SCOTT D. BERGTHOLD PLLC
sbergthold@sdblawfirm.com

Charles Gregory Fifer
APPLEGATE FIFER PULLIAM LLC
gfifer@afpfirm.com